UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No: 23-cr-10127-LTS |
| ) | |
| RAFAEL DAVILA ) | |

**<u>OPPOSITION TO GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE WITH RESPECT TO CONTESTED ASSETS</u>**

The Defendant, Rafael Davila, opposes the government's *Motion for Preliminary Order of Forfeiture with Respect to Contested Assets* [ECF #254].   The Contested Assets fall into three categories: (1) an asset which was used by Davila in the commission of the offenses, (2) assets allegedly obtained using proceeds of the offense *for which there is affirmative evidence as to when Davila acquired the assets,* and (3) assets allegedly obtained using proceeds of the offense *for which there is **no** evidence as to when Davila acquired the assets.*   As the nature of the Defendant's objections vary by category, each category will be treated in turn.

## **<u>The 2015 Chevrolet Suburban</u>**

Of the various items identified by the government as being subject to forfeiture, only one was in any way used in the commission of the offense—a 2015 Chevrolet Suburban belonging to the Defendant's father.[1]   The Defendant, Rafael Davila, has no property interest in the Suburban.   It is anticipated that the Defendant's father will be submitting a claim as to ownership of the Suburban and an objection to its forfeiture, buttressed with evidence bearing on his acquisition of the Suburban.

---

[1] The Defendant's father is also named Rafael Davila. To avoid confusion, he is referred to here as "Defendant's father" rather than by name.

**Assets For Which Affirmative Evidence Exists as to the Date of Acquisition –
2012 Can-Am Spyder Roadster, Two (2) Jet-Skis, & Blue Honda Gold-Wing Motorcycle**

*The 2012 Can-Am Spyder Roadster*

The Government alleges that a 2012 Can-Am Spyder Roadster (the "Spyder") is subject to forfeiture on the grounds that the Defendant purchased the vehicle using proceeds of the offense. The government asserts that because Davila had no legitimate employment at the time of its purchased, the Spyder must have been obtained using proceeds of the offense. The government's argument fails on both legal and factual grounds.

As a threshold matter, forfeiture is unavailable because the Spyder was acquired prior to the date of the Target Offenses as set for in the Indictment. RMV records establish that the Spyder was purchased on June 28, 2021 from a seller in New Hampshire. *See Affidavit of James Melberg* (ECF #254-1, hereinafter the "*Melberg Affidavit*") at 8. The Indictment alleges that Davila committed the Target Offenses on a diverse set of dates in 2022 and 2023. The Indictment does not allege—and Davila has not admitted to—the commission of any offenses prior to the dates alleged in the Indictment. Accordingly, an insufficient nexus exists between Davila's alleged acquisition of the Spyder and the charged offenses. *See United States v. Capoccia*, 503 F.3d 103, 110 (2007) (vacating forfeiture of assets predating offenses charged in indictment).

Furthermore, the Government's theory of forfeiture rests on a speculative theory—that because the government could find no evidence of the Defendant having been employed of the Spyder's purchases, it must have been purchased with criminal proceeds. The Defendant disputes the government's assertion that he had no legitimate income and, should it be necessary, requests the opportunity to present evidence on this point at an evidentiary hearing. Specifically, records seized from Davila's residence and contemporaneous electronic

communications during the period in question will establish that Davila regularly bought and sold vehicles for a profit.

Lastly, while the Defendant does not dispute having made the purchase, he maintains that he provided the Spyder to his father as a father's day gift. This is reflected in Davila's text messaging when the Spyder was acquired ("I'm on the way to New Hampshire to pick up the title for my dads Can-Am I bought for father's day"). *Melberg Affidavit* at 8. Notably, the date of these messages (June 21, 2021) was in fact Father's Day. RMV records further reflect that the Spyder is registered to Defendant's father. *Id.* Undersigned counsel has been advised that to the extent it becomes necessary, Defendant's father will be asserting an interest in the Spyder and an objection to its forfeiture.

*Two Jet Skis*

The government seeks to forfeit two jet skis, a SeaDoo and a Kawasaki. These items were purchased by Davila and registered on May 6, 2020 and May 8, 2020, respectively. *Melberg Affidavit* at 9. The alleged basis for forfeiture is identical to the theory proffered by the government for the Spyder—namely, that the jet skis must have purchased using illicit funds because the government believes that Davila had no legitimate income at the time. As discussed above, forfeiture should be denied because the Indictment fails to allege any criminal acts occurring at the time the jet skis were acquired. Accordingly, no forfeiture nexus exists as to the jet skis. Consistent with his position outlined above, the Defendant also disputes the government's assertion that he had no legitimate income at the time the jet skis were acquired and requests the opportunity to present evidence on that point should the matter proceed to a hearing.

*Blue Honda Gold Wing Motorcycle*

The government seeks to forfeit a Blue Honda Gold Wing Motorcycle (hereinafter "the Gold Wing"). The government claims that the motorcycle was purchased by the Defendant on or about November 18, 2022. The government claims that text messages from Davila's iCloud account reflect that it was purchased by the Defendant as a gift for his father. The Defendant denies purchasing the Gold Wing and gifting it to his father. He admits having assisted his father in its acquisition but maintains that his father was the purchaser and owner. Notably, the Gold Wing was not seized from the Defendant's residence in Feeding Hills but from his father's residence in Springfield. Undersigned counsel has been advised that the Defendant's father will be asserting an interest in the Gold Wing and objecting to its forfeiture.

### Assets For Which No Evidence Exists as to the Date of Acquisition – Green Dirt Bike, Blue/White BMW RR Sport Bike, Orange Honda CBR 600RR, Blue/Silver Sherco Dirt Bike, 2017 Red Suzuki

The remaining contested assets are all items for which the government has no affirmative evidence regarding the precise date as to when the Defendant acquired them.[2] In the absence of any evidence as to the time and circumstances of their acquisition by the Defendant, the government's theory of forfeiture amounts to wholesale speculation. The law does not presume that any and all assets of a Defendant are forfeitable as proceeds of the offense. Just the opposite. Under Fed.R.Crim.P. 32.2, the government bears the burden of establishing the "requisite nexus between the property [to be forfeited] and the offense." A bare assertion that the Defendant lacked a legitimate source of income, without more, does not establish that the property in question was obtained with the proceeds of the offense.

As outlined above, the Defendant argues that the government has failed to sustain their burden of demonstrating a forfeiture nexus for this category of contested assets. Not only is

---

[2] There is evidence that certain items (the Blue/White BMW RR Sport Bike, Orange Honda CBR 600RR, and 2017 Red Suzuki) were either registered to, or owned by, various third parties at various times in 2020, 2021, and 2022.

there no evidence that the Defendant acquired these items during the time period alleged in the Indictment, there is no affirmative evidence that they were acquired in the 2020-2021 time span during which the government contends Davila was engaging in similar relevant conduct. Moreover, should it be necessary, Davila challenges the government's claim that he had no legitimate income and requests the opportunity to rebut that assertion at a hearing.

## Conclusion

The Government's motion for preliminary order of forfeiture as to contested assets should be denied for the reasons detailed herein.   Even taking as true the government's representations that the Defendant was unemployed and lacked legitimate income dating back to February 2020, the Indictment alleges crimes occurring in 2022 and 2023.   As such, the government cannot establish the requisite nexus between the offense and the Contested Assets. Consequently, the Defendant believes that the government's motion can be denied without the need for a hearing.   To the extent the Court may disagree, the Defendant requests that a hearing be scheduled for Davila to present evidence and/or whereby interested third parties (e.g., the Defendant's father) can raise objections.   See Fed.R.Crim.P. 32.2(c) (providing for "ancillary proceeding" to resolve third party objections).

Respectfully submitted,
*/s/ Scott Lauer*
Scott Lauer,
   B.B.O.: 667807
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA   02210
617-223-8061 (phone)
617-223-8080 (fax)

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 22, 2024.

                <u>*/s/ Scott Lauer*</u>
                Scott Lauer